IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**RONALD LYNN RICHARDS,**

    **Plaintiff,**

v.                                        **CIVIL ACTION NO. 2:17-cv-03524**

**NANCY A. BERRYHILL,**
 **Acting Commissioner of Social Security,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. Presently pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 7) and Defendant's Brief in Support of Defendant's Decision (ECF No 10).

Ronald Lynn Richards, Claimant, filed an application for DIB on June 11, 2013. Claimant alleged disability beginning April 12, 2013. The claim was denied initially on November 12, 2013, and upon reconsideration on May 5, 2014. Thereafter, Claimant filed a written request for hearing on June 5, 2014. On November 5, 2015, a hearing was held before and Administrative Law Judge (ALJ) in Huntington, West Virginia. By decision dated March 30, 2016, the ALJ determined that Claimant was not entitled to benefits. Claimant sought review by the Appeals Council of the ALJ's unfavorable decision. On May 8, 2017, the AC notified Claimant that his request for review was denied (Tr. at 1-5). The AC stated "We found no reason under our rules to review the Administrative Law Judge's Decision. Therefore, we have denied your request for review" (Tr. at 1). The AC concluded the following:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We also considered whether the Administrative Law Judge's actions, findings or conclusions were contrary to the weight of the evidence currently of record.
>
> We found that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision (Tr. at 2).

The Order of Appeals Council dated May 8, 2017, made the following additional evidence part of the record:

| | |
|---|---|
| Exhibit 21E | Representative's brief dated May 18, 2016 (3 pages) |
| Exhibit 44F | Treatment records from Ahmed Sakkal, M.D., dated February 25, 2016 (5 pages) (Tr. at 5) |

Thereafter, Claimant filed a complaint with this Court pursuant to 42 U.S.C. § 405(g) (ECF No. 1).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment

meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that

3

> requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> 
> (2)   We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> 
> (3)   We have identified four broad functional areas in which we will rate the degree of your functional limitation:
> > Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> 
> (4)   When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas

(activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant meets the insured status requirements of the Social Security Act through December 31, 2017 (Tr. at 18). The ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date of April 12, 2013 (Tr. at 18). Under the second inquiry, the ALJ found that Claimant suffers from the

following severe impairments: hernias; ischemic heart disease; degenerative disc disease of the lumbar spine; affective disorders(s); and anxiety disorder(s) (Tr. at 19). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 20). The ALJ then found that Claimant has a residual functional capacity to perform work at the light exertional level[1] (Tr. at 24). The ALJ held that Claimant is unable to perform any past relevant work (Tr. at 31). The ALJ found that considering Claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Claimant can perform (Tr. at 31-32). The ALJ held that Claimant could perform jobs such as: office cleaner; routing clerk; inspector; and assembler (Tr. at 33). Therefore, the ALJ concluded that Claimant was not disabled. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving

---

[1] Claimant can perform light work as defined in the regulations except that he can occasionally stoop, kneel, crouch, crawl or climb ramps or stairs but can never climb ladders, ropes or scaffolds. Claimant should avoid concentrated exposure to unprotected heights and control of moving machinery. Additionally, Claimant is limited to simple, routine and repetitive tasks with no strict production criteria and should have only occasional interaction with the public (Tr. at 24).

conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was born on February 9, 1969. He graduated from high school. He lives with his wife and daughter (Tr. at 49). Claimant has his driver's license and drives locally (Tr. at 52). He received unemployment insurance in 2013 and 2014 (Tr. at 173).

### The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

Claimant averred that, on a daily basis, he woke up, took medications, watched television, walked outside, sat on his porch, looked at the garden, napped, did yard work and light house work and went to doctor's appointments (Tr. at 205). Claimant also reported that he could prepare his own meals, go outside every day, drive a car, and shop in stores (Tr. at 206-207). He went to church twice a week, and could walk half a mile before he needs to stop (Tr. at 209). Claimant could pay attention for two hours, follow spoken instructions, and can follow written instructions "pretty well" (Tr. at 209). Claimant reported that he used an abdominal binder after hernia surgery, but that he did not use a cane, crutches, walker, or any other assistive device for ambulation or stability (Tr. at 210).

In a subsequent adult function report, Claimant reported that he had no problems with personal care; prepared simple meals; and performed chores such as taking out the trash, light cleaning, laundry, and washing dishes (Tr. at 264). Claimant also reported that he went outside every day; drove; shopped in stores; handled his financial affairs; and attended church twice each week and his daughter's sporting activities three times each week (Tr. at 266). Claimant also reported that he could follow written instructions, but was better with spoken instructions, and gets along with authority figures (Tr. at 267-268).

Claimant's wife, Tina Richards, also completed a function report on behalf of Claimant. Mrs. Richards reported that Claimant stayed at home with their daughter while she goes to work and provides adult supervision (Tr. at 274). She stated that Claimant had no problem with personal care; prepared simple meals two to three times each week; did household chores such as laundry and dusting; went outside every day; shopped in stores; could handle financial affairs; attended church and their daughter's sporting events; could walk half a mile; and pay attention for two hours (Tr. at 275-78). She also reported that Claimant did not use an assistive device for ambulation or stability (Tr. at 279).

### Claimant's Testimony

Claimant testified that he would need to use the restroom within 15 to 20 minutes after eating and was unable to "hold it." (Tr. at 51). He described pain with eating and stated he did not eat right before bed for fear of accidents (Tr. at 66). Claimant stated he only drove short distances because of pain in his abdomen and back (Tr. at 52). He stated he found relief with pain medication and reclining. Claimant also said he panicked in traffic (Tr. at 52).

Claimant testified that he had a high school education but did not receive any additional vocational training (Tr. at 53). He previously had a CDL license, which he surrendered when

his impairments worsened and because he could not drive on his medication (Tr. at 53-54). He confirmed he had worked as a heavy equipment operator at a coal company for 19.5 years (Tr. at 54-55). Claimant explained that he was laid off from work due to absenteeism after his surgery and while he was still on short-term disability (Tr. at 55).

Claimant stated he was unable to work due to constant pain in his abdomen from a history of five hernias that worsened when bending over or sitting (Tr. at 57). He testified that his pain caused panic as well (Tr. at 57). Claimant indicated that lying down and taking Hydrocodone helped to relieve, but did not eliminate, the pain (Tr. at 58). He stated that Hydrocodone made him sleep and dizzy.

Additionally, Claimant testified to a 15-year history of back pain that has worsened over time (Tr. at 59). He described pain that radiated to both legs, right worse than left. He stated he had neck pain and a bone-to-bone grinding sensation and pain in his left shoulder. Claimant stated his pain was aggravated by stooping, standing, and walking far distances. He again explained that taking Hydrocodone and reclining reduced but did not eliminate these pains. Claimant confirmed that trigger injections provided only temporary relief (Tr. at 64). He testified that his neurologist, Dr. Schmidt, advised against back surgery because the risk outweighed any potential benefit. He stated he did not have satisfactory results with physical therapy beyond temporary relief during an ultrasound massage or while using a TENS unit (Tr. at 65-66).

Claimant stated he could stand approximately 15 to 20 minutes before needing to sit and rest (Tr. at 59). He stated he could sit for 30 minutes before needing to change position again due to abdominal and back pain. He could perform his activities of daily living when not depressed, performed light household chores, and mowed the yard with a riding lawn mower but

did not garden, hunt, or fish (Tr. at 66-67). He attended church on Sundays (Tr. at 68). He stated that he has difficulty following the storyline while watching television because of pain (Tr. at 69).

Claimant testified to experiencing numbness in his hands and feet that feel like "a thousand bee stings." (Tr. at 59). Claimant stated he had been prescribed Gabapentin and Neurontin but did not notice any improvement with these medications (Tr. at 60). He explained that he was not sure if he experienced side effects with these medications because he took so much medication that it was hard to "distinguish which one's doing what.".

Claimant testified he had a heart attack the previous November (Tr. at 60). He stated he underwent a heart catheterization and was in the ICU unit for several days before placing a stent (Tr. at 61). He stated that he experienced occasional chest pain and shortness of breath (Tr. at 61-62).

Claimant stated he was treated by a counselor and a psychiatrist for depression and anxiety (Tr. at 62). He stated he has been prescribed Zoloft, Buspar, and Xanax for the past two years or more (Tr. at 62-63). He explained Buspar helps on good days, and Xanax put him to sleep (Tr. at 63). Claimant described anxiety symptoms to include uncontrollable hand wringing, sweating, shortness of breath, and chest tightness. He stated his therapist has taught him breathing exercises and to use cold water to ease his symptoms, but he mostly requires Xanax. Claimant testified that his depression caused him to have no drive to do anything pleasurable, and he sometimes will not get dressed or leave his house for a week or more (Tr. at 63-64, 66).

## Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ erred in evaluating his credibility, thus, rendering the ALJ's final decision unsupported by substantial evidence (ECF No. 7). Claimant avers:

> [T]he ALJ discredited Richards's testimony by concluding that "after his stent placement, he has reported only mild, intermittent symptoms," when as noted in the ALJ's own summary of the evidence, "[s]ubsequent records also show… the claimant did complain of intermittent, mild exertional chest pain, dizziness and shortness of breath and exhibited a systolic ejection murmur and mild to moderate stenosis." (Tr. at 27)
>
> \*\*\*
>
> The ALJ's stated "reasons" for her credibility determination do not comport with the evidence she summarized or with the ALJ's own inconsistent statements about Richards's subjective symptoms and the evidence of record. The ALJ also failed to explain how the medical evidence was inconsistent or conflicted with Richards's statements and all allegations regarding his impairments. (ECF No. 7).

In response, Defendant asserts that Claimant has not proven he is disabled under the Social Security Act (ECF No. 10). Defendant avers that substantial evidence supports the ALJ's evaluation of Claimant's subjective complaints. (*Id.*) Defendant states:

> [T]he fact that the ALJ gave significant credence to Plaintiff's complaints and other limitations is plainly reflected in the RFC finding, which limited Plaintiff to light work with postural, environmental and mental limitations (Tr. at 24). In other words, the ALJ fully recognized that Plaintiff had significant work-related restrictions resulting from his impairments. However, for the reasons mentioned above and in the decision, the evidence simply did not support a finding that Plaintiff's testimony was fully credible (ECF No. 10).

### Discussion

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 04.1505(a); *see Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[An impairment] is not necessarily disabling. There must be a showing of related functional loss."). The responsibility for determining whether Claimant is

11

disabled resides with the Commissioner. 20 C.F.R. § 404.1527(e)(1). To be eligible for disability benefits, Claimant bears the burden of showing not only that he has a medically determinable impairment, but that it is so severe that it prevents him from engaging in his past relevant work or any other substantial gainful activity that exists in the national economy for a 12-month period. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A). "An individual does not have to be pain-free in order to be found 'not disabled.'" *Green v. Astrue*, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1457-58 (4th Cir. 1990)).

## Credibility

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). In making a credibility determination, the ALJ must follow a two-step analysis. "First, there must be objective medical evidence showing the existence of a medical impairment." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the ALJ must consider "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595.

The ALJ here followed this two-step analysis. At step one, the ALJ determined that "the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms" (Tr. at 25). Thus, the ALJ proceeded to step two and determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence. . . ." (*Id.*)

The ALJ considered Claimant's testimony and self-reports and provided reasons to support finding Claimant partially credible (Tr. at 24-31). The ALJ found that Claimant's allegations were

inconsistent because:

(1) Claimant's impairments including hernias, back pain, myocardial infarction, and anxiety, improved with treatment including medications, injections, and stent placement (Tr. at 25-28);

(2) Physical examinations regularly revealed a normal gait, full motor strength, normal posture, and normal reflexes (Tr. at 27);

(3) Claimant refused various treatment recommendations for his back pain (*Id.*);

(4) Mental status examinations were largely normal and revealed that Claimant was alert and fully oriented; calm and pleasant; made good eye contact; had normal speech; linear and goal directed stream of thought; normal thought processes and content; fair insight and judgment; normal memory; and normal attention and concentration (Tr. at 28);

(5) Mark Choueiri, M.D., Claimant's hernia repair surgeon, noted that Claimant could return to work with no restrictions (Tr. at 29, 431, 442);

(6) State agency physicians Porfirio Pascasio, M.D., and Rogelio Lim, M.D., reviewed the record and opined that Claimant could perform light work with postural and environmental limitations (Tr. at 28-29);

(7) State agency psychologist Paula Bickham, Ph.D., reviewed the record and opined that Claimant retained the ability to learn and perform work-like activity in an environment without strict production criteria (Tr. at 30, 101); and

(8) Claimant engaged in numerous activities that were inconsistent with his allegations of disabling impairments, including driving for up to 45 minutes at a time; caring for his own personal needs; performing household chores such as washing dishes and clothes and sweeping; mowing the grass; preparing simple meals; attending his daughter's sporting events; attending church; and, even, hunting occasionally (Tr. at 21-23, 31).

Furthermore, the ALJ stated that "Regarding the claimant's alleged physical impairments, the medical evidence of record shows improvement with treatment, normal or relatively minimal objective findings, and activities not consistent with the claimant's alleged limitations" (Tr. at 25).

As to Claimant's assertion that the ALJ failed to consider the seven factors in determining credibility, the undersigned is unpersuaded by Claimant's argument because "[t]here is no requirement that [the ALJ] state specific findings as to each factor" as the Claimant suggests. *Wolfe v. Colvin*, No. 3:14-CV-4, 2015 WL 401013, at *4 (N.D.W. Va. Jan. 28, 2015). The Fourth

Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010) (citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference").

In the present case, substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings (ECF No. 7) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **GRANT** the Defendant's Brief in Support of Defendant's Decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within

which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 29, 2018

Dwane L. Tinsley
United States Magistrate Judge